## IN THE UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Breiana Dailey, | : | |
| Individually and as Parent and | : | |
| Natural Guardians of Minor, | : | |
| Samir Dailey | : | |
| | : | Case No. |
| V. | : | |
| | : | |
| Excelsior School | : | JURY TRIAL DEMAND |
| | : | CIVIL ACTION-LAW |
| | : | |
| | : | |

## VERIFIED COMPLAINT

Plaintiffs by and through their undersigned attorneys, bring this Complaint against the above-named Defendants, agents, and successors in office, to safeguard her rights under the United States Constitution and in support thereof alleges the following:

## PRELIMINARY STATEMENT

1.  Samir Dailey (hereinafter "S.D.") is a fifth-grade student who is now in attendance in the School District of Philadelphia.

2.  Ms. Dailey ("Parent") enrolled S.D. in the School District of Philadelphia after the Excelsior School (*Hereinafter* the "School" or "Defendant") subjected S.D. to disability-based discrimination.

3.  Specifically, the School illegally removed S.D. from their rolls based on S.D.'s disability status.

1

4.  S.D. is diagnosed with, *inter alia*, autism spectrum disorder, posttraumatic stress disorder ("PTSD"), and a history of sexual trauma. S.D., therefore, is a person with a disability.

5.  In or around June 2018, the School dismissed  S.D. based on his disability status.

6.  Parent and S.D. seek compensatory damages for Defendant's discrimination, negligence, and/or negligent infliction of emotional distress, as well as compensatory damages for Parents' lost wages, S.D.'s loss of enjoyment of life, pain and suffering, deprivation of education/free appropriate public education ("FAPE"), and for exclusion from a program that receives federal funding.

## JURISDICTION AND VENUE

7.   This court has jurisdiction under 28 U.S.C. §1331, as the causes of action contained herein invoke federal question jurisdiction, as Plaintiffs bring claims arising under federal law.

8.   This court has supplemental jurisdiction over S.D.'s state claims pursuant to 28 U.S.C. § 1367.

9.  Venue for this action properly lies in this Judicial District pursuant to 28 U.S.C. §1391(b) because the events that give rise to the claims in this action occurred in this District.

## PARTIES

**Plaintiffs**

10. Breiana Dailey, as an adult individual, individually, and as parent and natural guardian of S.D. , a minor child, residing at 6603 Limekiln Pike, Philadelphia, Pennsylvania 19138.

**Defendants**

11. Excelsior is a private school and is believed to be a federal funds recipient, believed to be a business entity and doing business at 2111 Eastburn Avenue, Philadelphia, Pennsylvania 19138, for purposes of jurisdiction.

12. At all material times hereto, the School acted through its employees, agents, servants and/or workmen.

## FACTUAL ALLEGATIONS

13. S.D. is currently a fifth-grade student, now attending school within the School District of Philadelphia.

14. S.D. is diagnosed with, *inter alia*, autism spectrum disorder and posttraumatic stress disorder (*hereinafter* "PTSD"), and a history of sexual trauma. S.D. is additionally blind in his left eye. The School District of Philadelphia currently programs for S.D. through an individualized education program (*hereinafter* the "IEP").

15. S.D. started attending the School in October 2016, as a second-grade student.

16. Despite being a student with the above-indicated disabilities, the School never developed an IEP nor a related support plan for S.D. In fact, Parent requested that the School develop an IEP for S.D., only for the School to ignore her entreaties.

17. Parent, at all times relevant, informed the School that S.D. has autism and that he needed an IEP and/or disability support plan in order to receive a FAPE, and to access the School as a student with disabilities.

18. Sadly, prior to attending the School, S.D.'s father sexually abused him.

19. When S.D. started at the School, Parent informed the School of both S.D.'s autism diagnosis and sexual abuse history. Parent additionally supplied the School with relevant documentation regarding S.D.'s autism diagnosis and trauma.

20. In the fall of 2017, at the start of third grade, S.D.'s autism-related behavior worsened. Here, S.D.'s behavior declined, because the School failed to develop an IEP or similar disability accommodation plan. In fact, the School offered no disability accommodations to S.D.

21. Autism often accompanies behavioral concerns. For this reason, IEPs that program for autism usually contain a positive behavior support plan. This plan is based on evaluation data, which comes from a functional behavior assessment. Positive behavior supports form the core of special education programming for students with autism. These behavioral intervention plans frequently are based on applied behavior analysis, which is the *gold standard* of positive behavioral supports for these children.

22. Moreover, children with disabilities should receive disability accommodations to access their school. Absent these supports, the School has excluded and failed to offer accommodations to a student with disabilities.

23.  The IDEA and supporting regulations require that the IEP team, in the case of a child whose behavior impedes the child's learning or that of others, *consider* the use of positive

behavioral interventions and supports, and other strategies, to address that behavior. 34
CFR 300.324 (a)(2)(i). IEP teams also must include behavioral interventions in the IEP
when a student requires them to receive FAPE.

24. Because the School failed to develop a behavioral intervention plan through the IEP or
similar plan, S.D.'s disability-based behavior interfered with his ability to meaningfully
access his education.

25. Realizing the S.D. was regressing both academically and behaviorally, Parent, again,
renewed her request for an IEP or similar plan. Parent affirms that she wanted to work
with the School to help S.D. make meaningful gains and so that he could access the
School. The School, however, refused to develop an IEP or similar plan.

26. For the remainder of the third-grade year, the School denied S.D. a FAPE, through its
insistence not to develop an IEP or similar plan. The School compounded the severity of
S.D.'s behavior by refusing to provide supports through an IEP or similar plan. As such,
the School prevented S.D. from accessing his education as a student with disabilities.

27. While S.D. did engage in autism-related behavior while at School, the School refused to
program for the same.

28. In the case at bar, the School neglected S.D.'s emotional, behavioral, and social needs,
further denying him a FAPE and excluding him from his education.

29. Because the School neglected S.D.'s autism behaviors, other students began to bully S.D.
based on his disability-based behavior.

30. The School did not adequately address the disability-based bullying.

31. Here, by permitting students to bully S.D., the School further excluded him from his education as a student with disabilities. Moreover, the School allowed students to target S.D. based on his disability status. As such, the School facilitated a learning environment that tolerated disability-based discrimination.

32. The bullying further contributed to S.D.'s behavioral concerns. In June 2018, S.D. could no longer endure the bullying, and was involved in a fight. S.D. hit the other student in the eye, and then eloped from the classroom. S.D. suffered from this bullying "until he snapped."

33. By failing to both address the bullying and to program for S.D.'s autism-related behaviors, the School caused the situation where S.D.'s autism-related behavior escalated. Moreover, had the School programmed for S.D.'s behavioral needs, he would have had better impulse control and ability to regulate his response to the other student's bullying.

34. The failure to program for S.D.'s autism-related behavioral needs only caused him to regress.

35. Instead of programming for S.D.'s autism-related behaviors, the School increased the tuition Parent had to pay. The School essentially argued that Parent should have to pay more money in order for the School to program for S.D.'s disabilities.

36. Parent had a contract with the School to educate S.D. This contract contemplated a set price of tuition in exchange for instruction. Parent, in other words, paid consideration for the School's instruction. The School's decision to unilaterally modify the existing contract, without consideration, is both procedurally and substantively unconscionable.

Furthermore, the School's insistence that it would only perform the existing contract if Parent agreed to pay more is extortion.

37. In June 2018, the School informed Parent that it was expelling S.D. The School alleges that it could not program for his disabilities and disability-based behaviors. In other words, the School expelled S.D. based on his disabilities.

38. The School, in other words, *barred S.D. at the schoolhouse doors* due to his disabilities.

39. When the School expelled S.D., Parent requested S.D.'s student records. The School refused to give S.D. his records. This Firm additionally reached out to the School to obtain the student records. The School has not responded to this simple request.

40. Since the School has refused to provide the student records, Parent has had a difficult time enrolling S.D. in the School District of Philadelphia.

41. The School's refusal to hand over the student records was clearly intended to retaliate against Parent for exercising her rights. The School's conduct amounts to gamesmanship, and is intended to vex and intimidate her.

42. Due to the School's discrimination, denial of FAPE, retaliatory behavior, and by excluding S.D. from school based on his disability status, S.D. and Parent have now suffered emotional and financial harm.

### <u>COUNT 1</u>
**Denial of FAPE under Individuals with Disabilities Education Act 20 U.S.C. § 1400 *et seq* through abuse of student with disability.**

43. S.D. hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

44. The Defendant denied S.D. a FAPE under IDEA:

    a.   S.D. is a child with a disability who, by reason thereof, needs special education and related services;

    b.   The Defendants' failure to provide a FAPE included

        i.   Failure to develop an IEP; and

        ii.   Defendant's failure to provide a particular "related service."

45. S.D. regressed when the School failed to develop an IEP. S.D., as a student with autism and PTSD, needed an IEP, together with related services, to make meaningful gains.

46. S.D.'s behaviors further required that the School develop an IEP with a behavior intervention plan.

47. The School denied S.D. a FAPE when it failed to develop an IEP.

Wherefore, S.D.prays for relief against Defendants as hereinafter set forth in the prayer for relief.

## COUNT 2
### Rehabilitation Act of 1973, "Section 504"--Illegal exclusion from School and disability-based discrimination

48. S.D. hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

49. The Defendants discriminated against S.D. based on his disability status:

    a.   S.D. is a qualified individual with a disability, autism spectrum disorder;

    b.   S.D. is qualified to participate in a school program;

    c.   Based on information and belief, the School program receives federal financial assistance; and

      d.  Because of the expulsion and failure to develop an IEP or similar support plan, he was excluded from participating in, denied the benefits of, and subjected to discrimination at the School.

50. When the School expelled S.D., he was denied the benefits of their program.

51. In addition, when the School failed to develop an IEP or similar support plan, he was denied the benefits of his program.

52. As a direct and proximate result of Defendants' deliberate indifference and intentional discrimination, the Defendants denied S.D. the benefits of his program.

Wherefore, S.D. prays for relief against Defendants as hereinafter set forth in the prayer for relief.

### <u>COUNT 3</u>
**Americans with Disabilities Act, 42 U.S.C. § 12132 *et seq*. – denied the benefits of educational services in a safe environment by reason of disability and exclusion from school.**

53. S.D. hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

54. Defendants denied S.D. the benefits to her program under ADA:

      a.  S.D. is a qualified individual with a disability, namely autism spectrum disorder;

      b.  S.D. is otherwise qualified to participate in the school program;

      c.  Defendants' abuse denied S.D. the benefits of the program and subjected him to discrimination because of his disability; and

      d.  The denial of service and discrimination resulted from Defendants' deliberate indifference.

55. The School denied S.D. access to his program based on his disability.

56. The School showed its contempt for S.D. and his disability when the School excluded him from his education.

57. The School further showed their contempt for S.D. and his disability through their failure to develop an IEP and through their tolerance of disability-based bullying.

58. As a direct and proximate result of Defendants' deliberate indifference and intentional discrimination, the Defendants denied S.D. the benefits of his program.

Wherefore, S.D. prays for relief against Defendants as hereinafter set forth in the prayer for relief.

### COUNT 4
**§ 1983, 42 U.S.C. § 1983 – acting under color of state law, deprived plaintiff of rights and privileges secured to him by the Fourteenth Amendment (substantive due process).**

59. S.D. hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

60. Defendants deprived S.D.'s of rights and privileges secured to her by the Fourteenth Amendment. Moreover, Defendants violated S.D.'s rights to substantive due process when:

    a.  The School excluded S.D. from school and denied him an education based on his disability;

    b.  The Defendants acted under the color of state law, as they are federal funds recipients;

    c.  Defendants' exclusion of S.D. from School proximately caused the harm he encountered and the deprivation of his rights; and

d.  The School's deliberate indifference to the denial of education and exclusion shocks the conscience.

61. As a direct and proximate result of Defendants' willful conduct and deliberate indifference, they violated S.D.'s rights to attend school absent disability-based discrimination. Furthermore, Defendants have violated S.D.'s rights to FAPE under IDEA.

Wherefore, S.D. prays for relief against Defendants as hereinafter set forth in the prayer for relief.

## COUNT 5
### Section 1983, 42 U.S.C. § 1983-- State-created danger

62. S.D. hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

63.  Defendants violated S.D.' s rights through the School's state-created danger:

a.  Defendants acted in willful disregard of the safety of Plaintiff by permitting students to bully S.D.

b.  There existed a special relationship between the state and the Plaintiff such that Plaintiff was "a foreseeable victim of the defendant's acts," and as a "member of a discrete class of persons subjected to the potential harm brought about by the state's actions," as opposed to a member of the public in general.

c.  The state actor used its authority to create an opportunity for harm to occur that would not otherwise have existed.

d.  The harm ultimately caused was foreseeable and fairly direct.

64. As a direct and proximate result of Defendants' conduct, S.D. was forced to suffer from the unrelenting, disability-based bullying.

Wherefore, S.D. prays for relief against Defendants as hereinafter set forth in the prayer for relief.

### COUNT 6
### Negligent Hiring, Training, Supervision, and Retention of Staff

65. S.D. hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

66. Defendants owed a duty to care and a duty to protect children with disabilities, such as Plaintiff, against the imposition of harm; especially, from bullying and the resulting trauma.

67. Defendants had a duty to exercise ordinary care when hiring, training, and supervising their teachers and staff to recognize and address bullying of children with disabilities.

68. Defendants knew or should have known that it was important to screen and only hire teachers and staff who are qualified to work with children and who know how to recognize and address bullying of children with disabilities. Furthermore, Defendants had a duty to both train and supervise their teachers and staff.

69. Defendants had a duty to exercise ordinary care when hiring, training, and supervising their teachers and staff.

70. The Defendant's lack of oversight, failure to properly train, failure to supervise, and failure to monitor their teachers and staff, and their failure to protect children with disabilities, is a direct and proximate cause of Plaintiff's damages.

Wherefore, S.D. prays for relief against Defendants as hereinafter set forth in the prayer for relief.

## Count 7
### Breach of Contract

71. S.D. hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

72. Parent formed a contract when she paid consideration, in the form of tuition, in exchange for the School to provide S.D. with an education.

73. The School breached the Contract when it expelled S.D. The School further breached the contract when it unilaterally increased the tuition.

74.  In addition, the School breached the contract when it failed to program for S.D.'s disabilities and when it refused to address the bullying, both of which materially interfered with S.D.'s ability to participate in his education.

75. As a direct and proximate result of the School's breach of contract, S.D. has not received this bargained for educational benefit.

Wherefore, S.D. prays for relief against Defendants as hereinafter set forth in the prayer for relief.

## Count 8
### Unjust Enrichment

76. S.D. hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

77. Parent  paid the School tuition with the expectation that it would provide S.D.with an education. The School expelled S.D. and failed to provide him with an education.

78. Additionally, the School unilaterally increased and retained the tuition paid by Parent.

79. The School retained her tuition, despite not providing an education.

80.   Retaining the tuition that Parent paid unjustly enriched the School.

81. To avoid injustice, the School must pay restitution to Parent.

Wherefore, S.D. prays for relief against Defendants as hereinafter set forth in the prayer for relief.

**Count 9**
**Negligent Infliction of Emotional Distress**

82. S.D. hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

83. Defendants negligently inflicted severe emotional distress on Parent.

84. Defendant's negligence caused serious emotional distress.

85. As a direct and proximate result of Defendant's negligent infliction of emotional distress, Parent suffered severe emotional harm.

Wherefore, S.D. prays for relief against Defendants as hereinafter set forth in the prayer for relief.

**Count 10**
**Intentional Infliction of Emotional Distress**

86. S.D. hereby realleges all matters set forth in the preceding paragraphs of this complaint
    and incorporates them herein.

87.  The Defendant committed the tort of intentional infliction of emotional distress:

    a.  The Defendant, through their administration, acted intentionally and recklessly;

    b.  The Defendant's conduct was extreme and outrageous, exceeding the bounds of
        decency and, thus, utterly intolerable in civilized society;

    c.  The The Defendant's actions proximately caused S.D.'s emotional distress;

88. The emotional distress S.D. suffered is so severe that no reasonable person could be
    expected to endure such distress.

89.  S.D. in no manner contributed to his extreme emotional harm, which was a direct and
    proximate result of Defendant's own intentional and reckless conduct.

    Wherefore, S.D. prays for relief against Defendants as hereinafter set forth in the prayer
    for relief.


**DAMAGES**

Plaintiffs suffered general, special, incidental, expectation, and consequential damages as
the direct and proximate result of the acts and omissions of all Defendants, in an amount
that shall be proven at the time of trial. These damages include, but are not limited to:
damages for general pain and suffering; damages for the loss of enjoyment of life, both
past and future; medical and medical-related expenses, both past and future; travel and

15

travel-related expenses, both past and future; emotional distress, both past and future; pharmaceutical expenses, both past and future; lost wages, economic, and employment opportunities,  both past and future, and any and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

## PRAYER FOR RELIEF

WHEREFORE, Parent and S.D. respectfully prays that the court award her compensatory and restitutionary damages against Defendant Excelsior School for, including but not limited to, psychological treatment, lost wages, loss of future earnings, loss of enjoyment of life, emotional pain and suffering, expectation damages for education, and restitution for retention of tuition, and for disability-based discrimination.

## DEMAND FOR A JURY TRIAL

In accordance with Pennsylvania law, Parent and S.D. hereby demands a trial by jury on all appropriate issues.

Respectfully submitted,

16

**MONTGOMERY LAW, LLC**
1420 Locust Street, Suite    420
Philadelphia, PA 19102
*Attorneys for Plaintiffs*

Dated:  June 4, 2020

By:  _/s/Joseph W. Montgomery
Joseph Montgomery, Esq.
PA Bar ID 209527